

James W. Christian
jchristian@christianattarlaw.com

June 4, 2024

**Via ECF**
The Honorable Louis L. Stanton
United States District Court for the Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street
New York, NY 10007

**Re**: <u>**Mullen Automotive Inc., et al. v. IMC Financial Markets, et al.**</u>**, Case No. 1:23-cv-10637**

Dear Judge Stanton:

  We represent Plaintiffs Mullen Automotive, Inc. ("Mullen"), Hyon Cha and Shayan Khorrami, and write in response to Defendant IMC Financial Markets' ("IMC") request for a pre-motion conference on its proposed motion for Rule 11 sanctions (ECF No. 40).

  IMC's proposed motion—prior to the resolution of defendants' motions to dismiss (ECF No. 37)—is not only premature but is a baseless and transparently *ad hominem* attempt to intimidate Plaintiffs into dropping their claims. This tactic is part of a growing recidivist pattern of spoofing defendants threatening frivolous Rule 11 sanctions to avoid litigating these claims on the merits. In a similar spoofing matter, another court in this District recently refused to consider a similar motion for Rule 11 sanctions prior to adjudication of the pending motion to dismiss. *Northwest Biotherapeutics, Inc v. Canaccord Genuity LLC*, No. 1:22-cv-10185 (S.D.N.Y.) ("*NWBO*"), ECF No. 113 (Jun. 15, 2023) (refusing to consider Rule 11 motion until after resolution of motion to dismiss, if necessary). The Court should do the same here.

  The law in this Circuit is clear: "A statement of fact can give rise to the imposition of sanctions only when the 'particular allegation is ***utterly lacking in support***.'" *Kiobel v. Millson*, 592 F.3d 78, 81 (2d Cir. 2010); *Storey v. Cello Holdings, LLC*, 347 F.3d 370, 387-88 (2d Cir. 2003) (vacating sanctions order because factual allegations were not "utterly lacking in support" and noting that any "sanctions decision" must be "made with restraint"); *The Carlton Group, Ltd. v. Tobin*, No. 2003 WL 21782650, at *2 (S.D.N.Y. July 31, 2003) ("Sanctions should only be imposed where it is patently clear that a claim has absolutely no chance of success...all doubts must be resolved in favor of the signer of the pleading."). There is no legitimate argument that the FAC's allegations are "utterly lacking in support" or have "no chance of success."

  ***First***, Plaintiffs' First Amended Complaint (the "FAC", ECF No. 30) was filed only after an extensive pre-suit investigation, and like in *NWBO* and the other recently sustained spoofing cases, is based on detailed econometric analyses – transparently described in detail in the FAC – of extensive trading records. Indeed, in *NWBO*, the Court found that the plaintiff sufficiently alleged – based on allegations nearly identical to those at issue here – that the defendants engaged



www.christianattarlaw.com
1177 West Loop South, Suite 1700 | Houston, Texas 77027 | Phone: 713.659.7617 | Fax: 713.659.7641

in spoofing. 2023 WL 9102400, at *15-16 (S.D.N.Y. Dec. 29, 2023), *report and recommendation adopted*, 2024 WL 620648 (S.D.N.Y. Feb. 14, 2024) (complaint adequately pleaded manipulative conduct when matching anonymized transactions to deanonymized quote changes where "a transaction is followed by a change in a market participant's bid within five seconds that is equal in volume and price to that of the transaction"). Other courts have reached the same conclusion based on similar allegations.[1] Given that allegations based on similar methodologies have been accepted repeatedly, these allegations cannot be "utterly lacking in support."

**_Second_**, the substantive claims made by IMC in connection with its proposed Rule 11 motion make no sense, are contrary to the FAC, and contradict the caselaw in this District. After first disputing that it made any trades in response to Plaintiffs' first complaint, IMC now argues that it traded on only three of the 121 days alleged in the FAC, despite the fact that IMC has conceded that it is a Nasdaq-registered market maker in Mullen shares and regularly placed orders to trade Mullen shares on those dates. IMC's position is both implausible and inconsistent with its obligations under Nasdaq rules to "engage in a course of dealings for its own account to assist in the maintenance, insofar as reasonably practicable, of fair and orderly markets."[2]

Moreover, this assertion is belied by the facts alleged in the FAC and are not supported by any of the documents IMC has cited to date. As detailed in the FAC, IMC's manipulative market activity is supported by a methodology which, as noted above, other courts in this District repeatedly have accepted. ¶¶32-51. Plaintiffs' methodology matches orders within the same nanosecond and the same millisecond based on the extremely low probability that such co-occurrence would occur by random chance. ¶43. The in-sample accuracy rate was 90% on median and 84% on average, and the likelihood that at least one imputation is correct exceeds 99% with only three imputations. ¶43.[3] Plaintiffs then further corroborated their methodology by examining third-party data provided by the Depository Trust and Clearing Company (DTCC). And, IMC's attempt to disprove these claims now by assigning blame to its clients (*i.e.*, that any trading was done on behalf of client accounts and not by IMC for its benefit) is contrary to caselaw and is

---

[1] *See, e.g.*, *Harrington Global Opportunity Fund, Limited v. BofA Securities, Inc.*, 1:21-cv-00761, ECF No. 210 (S.D.N.Y.) (trades occurring within the same millisecond were relevant "evidence of coordination"); *see also Harrington*, 585 F. Supp. 3d 405, 417 (S.D.N.Y. Feb. 9, 2022) (finding defendant engaged in spoofing based on allegations of "indicia that distinguish spoofing from legitimate market activity, courts tend to examine (1) the passage of time between placement and canceling of orders (usually in milliseconds), (2) cancellation of orders when large baiting orders are partially filled or legitimate small orders are completely filled, (3) parking baiting orders behind smaller legitimate orders placed by other traders and (4) large disparities in the volume of baiting orders on one side of the market and legitimate orders placed by the spoofer"); *NWBO*, 2023 WL 9102400, at *15 (same); *Harrington*, 2023 WL 6316252, at *6 (broker-dealers primarily liable for customer spoofing); *Phunware v. UBS*, 2024 WL 1465244, at *5 (S.D.N.Y. Apr. 4, 2024) (same); *Kessev Tov, LLC v. Doe(s)*, 2022 WL 2356626, at *7-8 (N.D. Ill. June 30, 2022); *CP Stone Fort Holdings, LLC v. Doe(s)*, 2017 WL 1093166, at *3-4 (N.D. Ill. Mar. 22, 2017).

[2] Nasdaq Rulebook, Nasdaq Equity 2 Section 5. The only "evidence" that IMC attached to its first Rule 11 motion was a printout of publicly available data already in our possession. But as Plaintiffs explain in the FAC, those data do not include most market activity on the Nasdaq.

[3] Notably, Defendants have refused to provide verifiable evidence, such as nonpublic order events, trading records and custodial settlement records, which contradict the allegations in the FAC regarding their trading in Mullen during the Relevant Period.

inappropriate for consideration on a Rule 11 motion. ¶46. While IMC is entitled to argue, contrary to all other spoofing cases, in its motion to dismiss that it is not legally responsible for client or third-party activity, such an argument is inappropriate for a Rule 11 motion.[4]

IMC does not even mention the methodology set forth in the FAC, much less challenge it. Further, IMC fails to provide any data beyond that which was publicly available, even though its motion refers to "internal trading data" and an undisclosed "external report obtained from our clearing firm" upon which it relies to dispute Plaintiffs' allegations. Incomplete and cherry-picked pre-discovery assertions are not verifiable evidence to support Rule 11 sanctions. *Cf. Bunnell v. Haghighi*, 183 F. Supp. 3d 364 (E.D.N.Y. 2016) (factual assertions in complaint disproved by verified data obtained from third-parties pursuant to subpoenas served during discovery).

<u>**Finally,**</u> if IMC is permitted to file its Rule 11 Motion, Plaintiffs anticipate supporting their allegations with an expert opinion. Specifically, Plaintiffs' allegations and methodology have been reviewed by an industry expert with significant experience in market microstructure and analysis of trading data. To the extent necessary, Plaintiffs are prepared to supplement their allegations with this expert's opinion. It is well-settled law that reliance on such an independent expert opinion during a pre-filing inquiry provides a reasonable basis for factual allegations. *Tobin*, 2003 WL 21782650, at *5 (citing *Wigton v. Rosenthall*, 137 F.R.D. 4, 5 (S.D.N.Y. 1991)).

The FAC, thus, far exceeds the threshold for the preponderance standard, much less Rule 11. IMC's Rule 11 motion is nothing more than an improper end-run around discovery to try to scare Plaintiffs into withdrawing their meritorious claims. Therefore, IMC should not be permitted to file its proposed motion prior to the resolution of its motion to dismiss, if ever, and it should be denied if IMC is ultimately permitted to do so.[5]

> Respectfully,
> */James W. Christian/*
> James W. Christian

---

[4] Indeed, similar timestamp matching has been repeatedly accepted in this District to impute activity to spoofing defendants, even when such activity was taken by the defendant on behalf of clients and third-parties, as it was alleged to be here. *See, e.g.*, *Harrington*, 2023 WL 6316252, at *7 ("[P]rimary liability for a Rule 10b-5 violation may be found where a broker was reckless in not knowing that the trades he executed at another's direction were manipulative. This is the case even where the broker did not share the [customer's] specific overall purpose to manipulate the market for that stock."); *NWBO*, 2023 WL 9102400, at *18 ("NWBO need not allege that Baiting Orders were placed and cancelled by clients, let alone the same client, for its theory to survive."); *Phunware*, 2024 WL 1465244, at *4 (same).

[5] If IMC is permitted to move ahead with the filing of its anticipated Rule 11 motion and does so, Plaintiff intends to cross-move for sanctions against it and its counsel, Paul Hastings LLP.