December 19, 2025

<u>Via ECF</u>

The Honorable Louis L. Stanton
United States District Judge
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007-0123

Re: *Bollinger Innovations, Inc. et al. v. Clear Street Mkts. LLC et al.*,
<u>No. 1:23-cv-10637-LLS (S.D.N.Y.)</u>

Dear Judge Stanton:

We write on behalf of all named Defendants in the above-captioned action, pursuant to the Court's Individual Practices and Local Rule 37.2, to respectfully request a pre-motion conference regarding Plaintiffs' failure to produce the trading data, analyses, and records concerning the identification of the purported impact of each of the "Spoofing Episodes" alleged in the First Amended Complaint (the "FAC"), including the identification of the alleged Executing Purchases, Baiting Orders, and cancellation of Baiting Orders on which Plaintiffs relied in drafting the FAC. Plaintiffs have not produced these (or any other) materials in this action, even though Defendants served their First Set of Requests for the Production of Documents (the "RFPs") in July 2025. Nearly five months later, Plaintiffs have offered either now mooted or boilerplate objections and have failed to produce plainly responsive information. This failure is even more striking because—having now missed the December 12, 2025 deadline to file a motion seeking to amend their pleading—it seems apparent that Plaintiffs are standing by the allegations made in their FAC. Defendants respectfully request that this Court order Plaintiffs to participate in discovery in good faith and to produce the trading materials.

**<u>Background</u>**

Plaintiffs allege that Defendants engaged in "spoofing schemes" that involved the "strategic placement and cancellation of thousands of orders to sell"—orders referred to as "Baiting Orders," which were allegedly "not intended to be executed and had no legitimate economic purpose." (ECF No. 30 ¶ 2.) According to Plaintiffs, the Baiting Orders were intended to "'trick' other market participants into entering their own orders to sell" before Defendants could enter "Executing Purchases" at "artificially lower prices." (*Id.*) Accordingly, these Baiting Orders, and the details thereof, are foundational to the FAC and Plaintiffs' claims. Indeed, this Court relied on them in denying Defendants' Motion to Dismiss, finding that Plaintiffs' allegations "are sufficient to 'justify a reasonable inference . . . that spoofed Baiting Orders continue to emit a false pricing signal to the market after they have been cancelled.'" (ECF No. 70 at 16–17.)

Nevertheless, the FAC does not actually identify the specific orders that Plaintiffs claim constitute "Baiting Orders" and points only to a handful of "Examples" of supposed "Spoofing Episodes." (*See* ECF No. 30 at 41.) Nor does Exhibit 1 to the FAC provide enough information to enable Defendants to attempt to identify the specific orders that Plaintiffs assert are the "Baiting Orders."

December 19, 2025
Page Two

(*See, e.g.*, ECF No. 30-1 at 2.) Exhibit 1 does not, for example, contain an order timestamp and instead merely aggregates orders over an unidentified period of time:

**Defendant: IMC**

| Executing Purchase | | | Best Offer (Calculated) | Baiting Orders | | | Price Decline[1] |
|---|---|---|---|---|---|---|---|
| Date/Time | Volume | Price[2] | | Volume[3] | Min. Price[4] | Max. Price[4] | |
| 2021-11-09T11:17:12.148634051 | 543 | $9.48 | $9.59 | 600 | $10.30 | $10.52 | -1.91% |

On July 22, 2025, Defendants served their RFPs seeking, as Request No. 1, the production of the "trading data, analyses, and records, concerning the identification and/or calculation of the alleged impact of each of the Spoofing Episodes alleged in [the FAC], including Exhibits 1 through 4" of the FAC. (**Ex. A** at 8.) Plaintiffs objected to Request No. 1 with boilerplate objections and agreed to "search for relevant, non-privileged trading data as received from third parties regarding the impact of each of the Spoofing Episodes on Plaintiffs," subject only to a "resolution of contractual confidentiality restrictions." (*Id.*)

Five months later, Plaintiffs had not produced a single document. Thus, in a November 25, 2025 letter, Defendants sought from Plaintiffs (i) the prompt production of all material responsive to Request No. 1; (ii) a conferral concerning Plaintiffs' Responses and Objections to the RFPs; and (iii) the timeline for Plaintiffs' additional productions. (*See* **Ex. B**.) On December 5, Plaintiffs responded that they would be "happy to coordinate availability for meet-and-confers" and sought confirmation that Defendants were "qualified" to receive Nasdaq ITCH data pursuant to data and subscriber agreements. (*See* **Ex. C**.) While Defendants submit that they are not required to enter into separate data and subscriber agreements with third parties to receive discovery from the party who filed this action and put this data at issue,[1] on December 10, Defendants confirmed that they were each qualified to receive such data and again requested an update on Plaintiffs' production of the trading data. (*See id.*) To date, Plaintiffs have not produced any documents, nor have they offered dates for a conferral. Indeed, they have not responded at all to Defendants' latest query.

**Argument**

The Court should compel Plaintiffs to produce the relevant trading data, including the identification of the alleged Executing Purchases, Baiting Orders, and cancellations of Baiting Orders on which they relied in drafting their FAC, because (i) Plaintiffs have agreed to produce this material and their only substantive objection to production has been mooted; (ii) the material is plainly relevant and the subject of fact discovery; and (iii) the material is not work product.

Defendants are entitled to the identification of the basic information underlying the allegations against them—*e.g.*, the Baiting Orders and Executing Purchases sought in Request No. 1. Such material is plainly relevant to the claims and defenses in this action. (*See, e.g.*, ECF No. 30 ¶ 2 (alleging that the "spoofing schemes" employed "'Baiting Orders,'" which had "no legitimate economic purpose" and were used in order to allow Defendants to execute their own orders to buy at "artificially lower prices").) Such material is also relevant to the issue of whether Plaintiffs' pleadings were filed, and/or advocated for in compliance with Rule 11. *See* 15 U.S.C. § 78u-4(c).

---

[1] Defendants reserve all rights on this position, but, as noted above, the issue is moot for present purposes because Defendants already have pre-existing data and subscriber agreements with the relevant third-party data source.

December 19, 2025
Page Three

Moreover, the production of the trading data should not pose a significant burden since it concerns the data on which Plaintiffs already compiled and relied on in drafting the FAC.

For these and similar reasons, courts in this district have routinely ordered the production of such information during fact discovery.  *See, e.g.*, *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, No. 1:22-cv-10185-GHW-GS, ECF No. 235 at 4 (S.D.N.Y. Oct. 17, 2025) (granting motion to compel and ordering plaintiff to "identify the Baiting Orders and cancellations of Baiting Orders as alleged" in the complaint); *Harrington Glob. Opportunity Fund, Ltd. v. CIBC World Mkts. Corp.*, No. 21-cv-761-LGS-VF, ECF No. 167 at 2 (S.D.N.Y. Dec. 13, 2023) (ordering the identification of the alleged "Baiting Orders" where plaintiff had not disclosed when the orders were placed, by whom, in what quantity, or at what prices—information that was "essential" to defendants' defenses).  Both *Nw. Biotherapeutics* and *Harrington* are directly on point.  In both, plaintiffs alleged that defendants engaged in spoofing by placing fictitious "Baiting Orders," and the defendants sought identification of the specific "Baiting Orders" during fact discovery.  Both courts then held that such information was relevant to the claims and defenses and appropriately sought in fact (not expert) discovery.  *See Nw. Biotherapeutics*, ECF No. 235 at 4; *Harrington*, ECF No. 167 at 2.

To the extent that Plaintiffs assert that such information is protected by privilege or the work product doctrine, that assertion should be rejected.  The work product doctrine is "narrowly construed" and protects "legal theories and strategy," not the production or identification of facts underlying a complaint.  *Granite Partners v. Bear, Stearns & Co.*, 184 F.R.D. 49, 52 (S.D.N.Y. 1999) (citations omitted); *see Nw. Biotherapeutics*, ECF No. 235 at 4; *Harrington*, ECF No. 167 at 2.  To be sure, Defendants do not seek Plaintiffs' "legal theories and strategy" but merely the production of the data and facts on which Plaintiffs relied in preparing the FAC.[2]  Plaintiffs opposed (and survived) Defendants' Motion to Dismiss by making factual allegations based on the trading data, for example, that Defendants purportedly placed and cancelled "tens of millions of Baiting Orders."  (ECF No. 61 at 5–6 (emphasis omitted).)  In order to defend against such allegations, Defendants must be given access to the trading data underlying them.  Plaintiffs cannot be permitted to use such allegations as both a sword and shield.

For the foregoing reasons, Defendants respectfully request that the Court order Plaintiffs to produce the trading data and records on which they relied in the FAC (including the date, time, price, quantity, and trading venue for each order) within seven days of the Court's order and to identify within that data the Executing Purchases, Baiting Orders, and cancellations of Baiting Orders as alleged in the FAC.  We thank the Court for considering this request.

---

[2] Even if the trading data were somehow work product (it is not), Plaintiffs have waived any protection by putting the Baiting Orders and Executing Purchases "at issue" by expressly relying on them in the FAC and in opposing Defendants' Motion to Dismiss.  *See Felder v. Warner Bros. Discovery*, 2025 WL 1718098, at *13 (S.D.N.Y. June 20, 2025).  Similarly, even if the data is work product and that protection was not waived (neither are true), production should still be compelled due to Defendants' "substantial need."  *See* Fed. R. Civ. P. 26(b)(3)(A); *Granite Partners*, 184 F.R.D. at 56 (ordering production of information underlying complaint where defendants had "no alternative means to obtain" it); *Harrington*, ECF 167 at 2 (work product protection over "identification of the orders on which the Complaint is based" was "overcome by Defendants' substantial need").

December 19, 2025
Page Four

Respectfully submitted,

/s/ Eric D. Lawson
Eric D. Lawson
MORRISON & FOERSTER LLP
250 West 55th Street
New York, NY 10019
Telephone: (212) 336-4067
Facsimile: (212) 468-7900
Email: ELawson@mofo.com

Anthony S. Fiotto
Julia C. Koch
200 Clarendon Street
Boston, MA 02116
Telephone: 617-648-4700
Facsimile: 617-830-0142
Email: AFiotto@mofo.com
Email: JKoch@mofo.com
*Counsel for Clear Street Markets LLC (n/k/a Summit Securities Group LLC) and Clear Street LLC*

/s/ Jennifer L. Conn (with permission)
Jennifer L. Conn
Zachary D. Melvin
PAUL HASTINGS LLP
200 Park Ave
New York, NY 10166
Telephone: (212) 318-6004
Facsimile: (212) 319-7004
jenniferconn@paulhastings.com
zacharymelvin@paulhastings.com

Ryan P. Phair
Robert A. Silverstein
2050 M Street NW
Washington, DC 20036
Telephone: (202) 551-1751
Facsimile: (202) 551-0251
ryanphair@paulhastings.com
robertsilverstein@paulhastings.com
*Counsel for IMC Financial Markets*

/s/ Tammy L. Roy (with permission)
Herbert S. Washer
Tammy L. Roy
CAHILL GORDON & REINDEL LLP
32 Old Slip
New York, NY 1005
Telephone: (212) 701-3000
Facsimile: (212) 269-5420
hwasher@cahill.com
troy@cahill.com
*Counsel for UBS Securities LLC*